U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

APR 2 9 2011

CLERK, U.S. DISTRICT COURT
By _____
Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE KITEC PLUMBING SYSTEM PRODUCTS | §<br>§<br>§ | Case No. 09-md-2098 |
| LIABILITY LITIGATION | §<br>§ | MDL NO. 2098 |

**ORDER GRANTING MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Docket No. 74) was filed on March 17, 2011, and the Court held a day-long hearing on April 27, 2011 on the motion. After considering the pleadings and the extensive briefing, the objections of certain plaintiffs, and having heard the arguments of counsel for good cause shown, it is hereby ORDERED that (1) the Joint Motion for Preliminary Approval of Class Action Settlement Agreement; (2) preliminary and conditional certification of a settlement class; (3) approval of the form and content of Notice and Settlement; including the Claim Form, Plan of Distribution and Allocation and the Opt-out Form; (4) an injunction against and stay of all claims and actions against the IPEX Defendants with regard to the U.S. Class; and (5) setting of a Formal Fairness Hearing and deadlines are GRANTED as follows:

1. The Judicial Panel on Multidistrict Litigation ("JPML") centralized and transferred twelve original Kitec cases to this Court. In re Kitec Plumbing Sys. Prod. Liab. Litig., 655 F. Supp. 2d 1364 (J.P.M.L. 2009). Subsequently, additional tag-along against IPEX cases were transferred here and two cases against three Texas homebuilders were transferred here: Davis v. McGuyer Homebuilders, Inc., et al., which was removed

from Texas state court and transferred here, and *Swets, et al v. PulteGroup, Inc., et al,* which was transferred here from the District Court of Arizona..

2.     On March 21, 2011, certain plaintiffs filed a Notice of Intent To Oppose Plaintiffs' Motion For Preliminary Approval Of Class Action Settlement (Docket No. 75).  In response to the Notice of Intent to Oppose, the Court set a deadline of April 15, 2011, for the filing of formal objections to preliminary approval.  Order (Docket No. 76). Six plaintiffs filed formal objections to preliminary approval by the Court's deadline (Docket No. 82).  On April 27, 2011, the Court held a day-long hearing on the motion and objections.  Order (Docket No. 79).[1]

3.     The parties to this action and those in actions pending in Canada, have reached a settlement agreement (the "Agreement") subject to Court approval that would resolve claims throughout the United States and Canada.  Except as otherwise specified, all defined terms used in this Order shall have the same meaning as set forth in the Class Action Settlement and Release Agreement executed by the Settling Parties and filed with the Court.  As explained below, the Agreement proposes a Settlement  (the "Settlement") that falls within the discretionary range of possible approval and otherwise meets the requirements for preliminary approval.

4.     The proposed Settlement as set forth in the Agreement executed by Class Counsel on behalf of Plaintiffs Thomas Brashier, Johnnie Bryant, Teresa Bryant, Melvin Burns, Mindi Campbell, Trent Campbell, Patrice Clark, Richard Clark, Singh Cordes,

---

[1] Counsel for the plaintiffs in *Davis* and *Swets* had proposed a separate "builder track" for cases involving controversies with homebuilders.  Motion For Establishment Of Separate Homebuilder Case Management Track And For Appointment Of Homebuilder Track Co-Lead Counsel And Memorandum In Support Thereof (March 14, 2011) (Docket No. 73) ("Builder Track Motion").  At a March 25, 2011 hearing, counsel for the *Davis* and *Swets* plaintiffs agreed that motion should be held in abeyance until the Court has ruled on the application for approval of the proposed class action settlement.  Order Abating Motion For Establishment Of Separate Homebuilder Case Management Track (April 6, 2011) (Docket No. 81).

Frances Cordes, Todd Covington, Eugene Ehler, Jeffrey Eisenman, John Fliss, Anessa Johnson, Ardy Johnson, Thomas Olsen, Veronica Olsen, Shivanii Singh, and Larry Ward (the "U.S. Class Representatives") and on behalf of Defendants IPEX, Inc., IPEX USA, L.L.C., and its predecessor IPEX USA, Inc. and IPEX Distribution Inc. (the "IPEX Defendants") is preliminarily approved, subject to a Formal Fairness Hearing as provided in this Order to determine whether the settlement is fair, adequate, and reasonable.

5.      The parties have presented to the Court for review a plan to provide notice to the potential members of the U.S. Class of the Settlement and the various options the potential members have, including, among other things, the option for potential members to opt out of the U.S. Class; the option to be represented by counsel of their choosing and to object to the proposed settlement; and/or the option to participate as a claimant in the settlement.  The Notice Plan proposed by the U.S. Class Representatives and the IPEX Defendants (the "U.S. Settling Parties") is the best practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23.  In addition, the Court finds that the proposed claims procedure and Plan of Distribution and Allocation presented to the Court for consideration is fair and sufficient, and that the Notice to class members describing both provides sufficient detail to the members of the class, so that it is appropriate to proceed with preliminary approval and the Notice Plan.

6.      This Court is satisfied that counsel have submitted enough information to support the conclusion that there are no obvious deficiencies in the proposed Agreement, that the proposed Class satisfies the class action requirements set forth in Federal Rule of Civil Procedure 23 (a) and (b) for purposes of a settlement class only, and that potential

members of the U.S. Class should be notified of the proposed Settlement and a Formal Fairness Hearing scheduled.

7.     As detailed below, continued or additional litigation involving claims against IPEX Inc and IPEX USA LLC (or claims against builders and plumbers who are likely to seek indemnity or contribution from the IPEX Defendants) will interfere with this Court's jurisdiction to consider, approve, and effectuate the Settlement, which necessitates temporary injunctive relief in aid of the Court's jurisdiction. The Court has observed that construction litigation typically grows to add new parties, which, as a practical matter, would regularly come to include the settling defendants in this case, IPEX Inc and IPEX USA LLC, for cases involving their plumbing systems, absent an order affecting such proceedings.

## PRELIMINARY APPROVAL OF SETTLEMENT CLASS

8.     This case is provisionally and conditionally certified, subject to final approval of the Settlement in conjunction with the Formal Fairness Hearing, as a class action for settlement purposes only pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

The U.S. Class shall be defined as follows:

> All Persons that own, have owned, lease, or have leased, and all those who have or may pursue claims through or in the name or right of those who own or have owned, lease or have leased, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained Kitec Systems manufactured and/or sold by the IPEX Defendants, excluding only the Clark County Class. For purposes of this definition, individuals and entities shall include any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subsequent owners or

occupants, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.

Excluded from the U.S. Class are:

    a.  all persons who, on a timely basis, exercise their opt-out rights under Rule 23 of the Federal Rules of Civil Procedure;

    b.  all Persons who filed an individual lawsuit concerning Kitec Systems in any court of law, provided that claim has been resolved with a final judgment, whether or not favorable to the Person;

    c.  the IPEX Defendants, any entity in which the IPEX Defendants has a controlling interest, any entity which has a controlling interest in the IPEX Defendants, and IPEX Defendants' legal representatives, assigns, and successors; and

    d.  the judge to whom the U.S. Kitec MDL Class Action is assigned and any member of the judges' immediate family.

9.    The Court finds that the above-described Class definition is appropriate and is not overly broad. The proposed settlement provides substantial benefits to the Class Members, including establishment of a settlement fund totaling $125,000,000.00 in cash. Unless they exercise their individual right to opt out of the Settlement, the six objecting plaintffs are within the definition of the U.S. Class and their claims are resolved by the Settlement.

10.    The Court preliminarily concludes that, for the purposes of approving this settlement only and for no other purpose and with no other effect on this litigation should the proposed Settlement Agreement not ultimately be approved or should the Effective

Date not occur, the proposed Rule 23 Class likely meets the requirements for certification under Rule in that:

    a.    The proposed class contains thousands of members and is so numerous that joinder is impracticable;

    b.    There exist questions of fact and law common to the members of the U.S. Class.  All members of the U.S. Class contend that the Kitec Systems were defective;

    c.    The claims of the U.S. Class Representatives are typical of the claims of the U.S. Class;

    d.    U.S. Class Representatives and Counsel for the U.S. Class will fairly and adequately protect the interests of the U.S. Class; and

    e.    Resolution of this action in the manner proposed by the Agreement is superior to other available methods for a fair and efficient adjudication of the action, and common issues resolved through this Settlement predominate over individual issues. The Court also notes that, because this action is being settled rather than litigated, the Court need not inquire whether the case, if tried, would present intractable management problems. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  The Court has satisfied itself that individualized defenses need not be adjudicated in order to approve the settlement and that any individualized defenses do not predominate rendering class certification inappropriate in the settlement context.

    11.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Class Action Settlement and Release Agreement between Plaintiffs and all class members who

have not properly excluded themselves pursuant to Rule 23 in the U.S. Class and the IPEX Defendants is preliminarily approved.

12.     In making this determination, the Court finds that there is "'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n-E. R.R.*, 627 F.2d 631, 634 (2d Cir. 1980). Conditionally certifying a class in connection with preliminary approval allows notice to the class. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 427 n.2 (E.D. Tex. 2002).

13.     Among the evidence presented to the Court is a declaration from the Honorable Daniel H. Weinstein, the founder of JAMS, who presided during a period of eighteen months over four mediations sessions that ultimately resulted in the Agreement documenting the Settlement.  Based on his extensive experience in this case and many others, Judge Weinstein has testified that:

- All parties to the negotiations were represented "through zealous and able counsel, who negotiated aggressively and at arm's length."

- The $125 million obtained for the Settlement Classes through the Settlement "represents a fair and reasonable result for all parties involved" and "represents the highest settlement amounts that the Settlement Classes could have achieved at this time."

- Releases of third parties such as builders and plumbers was essential to the Settlement because IPEX and its insurers "realized that they could never obtain a negotiated end to the Kitec System allegations without the releases." The Settlement "would not work" if IPEX or its insurers were exposed to additional liability through third-party actions following the settlement.

- IPEX's primary and excess insurers raised "serious insurance coverage issues that threatened the ability to fund any Settlement and pending coverage litigation was on file." The prospect of having to fund a settlement or fight litigation with limited or no insurance was "untenable to IPEX's business and financial condition."

- The multitude of class actions facing IPEX, which had never before been a party to large scale litigation "threatened its survival."

14.     The evidence demonstrates that the Settlement, which is recommended by the Court-appointed Interim Lead Counsel, falls well within a range warranting notice to absent class members. The IPEX Defendants and their insurers have agreed to pay $125 million into a Settlement Fund following preliminary approval.[2]   After final approval, class members may file claims over the course of the next eight years. The Settlement provides the Class with an immediate and substantial source of recovery while eliminating risks to the Class that further litigation would yield little or no recovery. Most importantly, the Settlement eliminates risks associated with serious insurance coverage disputes between IPEX and its insurers. In addition, the Settlement allows class members to avoid the risk that IPEX would choose court liquidation or protection and that any future judgment against IPEX would not be collectible against its parent company, a private entity based in Europe.   The Settlement Fund is particularly remarkable because the plaintiffs allege that Kitec Systems have only a "propensity-to-fail," the vast majority of class members have incurred no actual damages and likely never will.

15.     The Settlement followed thorough investigation and discovery and is the product of arm's-length negotiation between experienced, capable counsel, assisted by a mediator whose reputation and experience are unparalleled. *See* 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 at 90 (4th ed. 2002) ("Newberg") ("There is usually a presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for approval."). In the

---

[2] Because the Settlement covers claims asserted in Canada, it also requires approvals by Canadian courts.

final approval context, the Fifth Circuit has given substantial weight to the experience of the attorneys who prosecuted and negotiated the settlement, *see, e.g., Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), and courts can weigh the fact that an experienced mediator oversaw the negotiations. *See Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 211 (W.D. Tex. 1998). There are no grounds to doubt the fairness of the Settlement or other obvious deficiencies, such as unduly preferential treatment of a class representative or of segments of the class, or of excessive compensation for attorneys.

16. As a legal matter, the release provisions in the Settlement are well within the Court's authority to approve. "The weight of authority establishes that . . . a court may release not only those claims alleged in the complaint and before the court, but also claims which 'could have been alleged by reason of or in connection with any matter or fact set forth or referred to in' the complaint." *In re Corrugated Container Antit. Litig.*, 643 F.2d 195, 221 (5th Cir. Apr. 1981) (quoting *Patterson v. Stovall*, 528 F.2d 108, 110 n.2 (7th Cir. 1976)); *see also Klein v. O'Neal*, 705 F. Supp. 2d 632, 666-67 (N.D. Tex. 2010); 4 Newberg § 12:16 at 318 ("A settlement may also seek to discharge parties who have not been served with process and are therefore not before the court."). The fact that a released party has not contributed to the proposed settlement "does not preclude the court from approving an agreement that releases them, provided the settlement is fair, reasonable, and adequate to the class as a whole." *See Klein*, 705 F. Supp. 2d at 666 ; *see also In re WorldCom, Inc.*, 347 B.R. 123, 156 (Bankr. S.D.N.Y. 2006) (holding that the release of non-contributing, third-party railroad companies in class action settlement was proper where the claims would have been based on the same "underlying factual predicate"); *Percodani v. Riker-Maxson Corp.*, 50 F.R.D. 473, 477 (S.D.N.Y. 1970)

("[T]he release of noncontributing defendants through a settlement agreement is no reason for disapproving the compromise . . . .").

17. Practically speaking, if the Settlement did not release the parties described in the "Released Parties" provision, the very purpose of the agreement would be undermined. Issues of indemnity, contribution, and third-party practice would inevitably loop IPEX into future claims brought against third parties such as homebuilders, retailers, plumbers, and contractors. *See Klein*, 705 F. Supp. 2d at 666-67 (recognizing defendants' and insurers' concerns about continuing, open-ended liability without the third-party release, and commenting that their "desire to settle on terms that eliminate the risk of further liability or additional . . . litigation is reasonable"). Absent a release of builders and plumbers, there would be no incentive for IPEX to settle.

18. Interim Lead Counsel's recommendation for preliminary approval reflects their reasonable conclusion that the class would benefit more by obtaining a $125 million cash settlement fund from the IPEX Defendants and their insurers now than foregoing that bird in the hand for the risky prospect of trying to pursue and collect future judgments against IPEX and perhaps against the limited number of builders sued by the objectors. The objectors, however, remain free to opt out of the settlement and pursue individual claims.

19. In the event the Effective Date, as defined in the Agreement, occurs, all Plaintiffs and other members of the U.S. Class shall be deemed to have and shall have forever released and discharged their claims in accordance with the Agreement. In the event the Effective Date does not occur for any reason whatsoever, (1) the Agreement shall be deemed null and void and shall have no effect whatsoever; (2) the conditional

class certification shall automatically be vacated; and (3) the Agreement and the fact that it was entered shall not be offered, received, or construed as an admission or as evidence for any purpose, including the ability of any other class to be certified.

20.     The Agreement, actions in conformance with or in furtherance of the Agreement, and the other documents prepared or executed by any party in negotiating or implementing the Settlement, including any terms of any such documents, shall never be offered in evidence in or shared with any party to any civil, criminal, or administrative action or proceeding without the IPEX Defendants' express written consent.

21.     This preliminary approval is contingent upon complementary preliminary approval orders granted by the Canadian courts in both Ontario and Quebec as part of the parties' Agreement to reach a coordinated settlement in both the United States and Canada. Upon the issuance of this Order, the parties will seek judicial approval in both the Ontario and Quebec courts and provide this Court with copies of any orders that issue.

**APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

22.     The Court appoints Thomas Brashier, Johnnie Bryant, Teresa Bryant, Melvin Burns, Mindi Campbell, Trent Campbell, Patrice Clark, Richard Clark, Singh Cordes, Frances Cordes, Todd Covington, Eugene Ehler, Jeffrey Eisenman, John Fliss, Anessa Johnson, Ardy Johnson, Thomas Olsen, Veronica Olsen, Shivanii Singh, and Larry Ward to serve as class representatives of the U.S. Class.

23.     Consistent with Pretrial Order No. 1 – Pretrial Organization Of Counsel (Dkt No. 19) (December 9, 2009), the Court reaffirms the appointment of Charles LaDuca of Cuneo Gilbert & LaDuca, LLP, Michael McShane of Audet & Partners LLP,

Robert K. Shelquist of Lockridge Grindal Nauen P.L.L.P., Michael Ram of Ram and Olson L.L.P., Jeffrey Cereghino of Merrill Namora & Molineaux LLP, as Co-Lead Class Counsel ("U.S. Class Counsel"), and Sam Lock of Law Offices of Sam Lock as Liason Counsel.

### Establishment of Settlement Fund

24.     The settlement contemplates that within 15 business days after entry of the last of the Preliminary Approval Orders necessary to effectuate the Agreement, the IPEX Funding Entities shall create a Settlement Fund of US $125,000,000.00 to be held in escrow and trust under the terms of the Agreement until the Effective Date occurs or earlier termination of the Agreement.  The Settlement Fund shall be held, in accordance with the Agreement, by UBS (or such other financial institution appointed by the Parties in writing) in escrow and trust.  The Settlement Fund qualifies as a Qualified Settlement Fund and shall be deposited in and invested for the benefit of the Settlement Classes. The Qualified Settlement Fund shall be treated for federal income tax purposes as a QSF within the meaning of U.S. Department of Treasury  Regulation § 1.468E-1 and in accordance with section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

### Notice Plan

25.     The Court approves the Notice Plan and the form and content of the Settlement Notice proposed in the Agreement.  Settlement Notice, including without limitation, the rights of the U.S. Class to object to participate in the Settlement shall be given by issuance of notice consistent with the terms of the Agreement and the Notice Plan.

26.     The Notice Plan contemplated by the Settlement comports with Rule 23 and due process and is the best notice practicable under the circumstances.  Where class member addresses are not available through reasonable effort, the law does not mandate individual notice.  *See* Fed. R. Civ. P.  23(c)(2)(B).

27.     It would be impossible under the circumstances presented to require the named plaintiffs, the IPEX Defendants, or non-party builders to determine the addresses of all members of the class, which approximates 292,000 members.  According to the National Association of Home Builders ("NAHB"), 28,523,100 million homes were built in the United States between 1990 and 2008.  The current directory for the NAHB includes 139,683 members—38,740 of which are various types of residential and commercial builders.  This does not account for numerous homebuilders that were in business for some portion of that period but later left the industry due to bankruptcy or other reasons.

28.     As product manufacturer during the 1990-2008 time period, IPEX sold to wholesale plumbing suppliers nationwide who in turn sold to plumbers, homebuilders or others.  As a result, IPEX has no way to know which of the 38,740 builders scattered throughout the country used Kitec Systems in construction of the 28,523,100 homes, let alone where that construction is located.  In many cases, the builders themselves may not know whether or not Kitec Systems were used because the plumbing contractor on any given project was responsible for choosing the plumbing system to be installed.  While objectors propose requiring homebuilders who used Kitec Systems to notify homeowners regarding the Settlement, it would be impossible or impractical to even identify all the relevant homebuilders, let alone make them parties to the Settlement.  To date, only a few

homebuilders in Texas have been named as parties to cases within the MDL; in all but two of the cases before the MDL court, no homebuilder has been sued. The counsel for the six plaintiffs who oppose preliminary approval has filed class actions against IPEX in March 2009 and did not sue builders or plumbers in those cases and has taken no action to add builders or plumbers to those cases.

29.     Given the impracticalities and expense of reaching out to more than 38,000 homebuilders across the country who may or may not have, at some time, contracted for installation of a Kitec System some time over the past twenty years, the Notice Plan reaosnably depends instead on widespread publication calculated to reach homeowners, builders, plumbers, and the trade associations, such as the National Association of Homebuilders, of which they are members. This Notice Plan, which was designed by a leading class action provider, CAC Services, Inc., is the most reasonable method to reach the greatest number of class members. Specifically, the notice program includes direct mail notice to builders and plumbers (who may in turn advise their customers) and to known class members. In addition, there will be an extensive radio and television media campaign and publication notice in *Parade* and other periodicals and newspapers, calculated to reach homeowners. All of the notices will direct readers and viewers to a detailed class website, which includes descriptions and photos of the Kitec System, the Short-form and Long-form Notices, and the Opt-Out and Claims Forms.

30.     This broad-based notice plan comports with others previously approved by courts, particularly in the large consumer class actions context. See, *e.g., Dennis v. Kellogg Co.*, No. 09-CV-1786-IEG (WMc), 2010 WL 4285011, at *6 (S.D. Cal. Oct. 14,

2010) (where defendant did not sell directly to consumers and could not identify class members directly, notice plan included publications in targeted media sources including magazines, newspapers, and websites; detailed notices and forms provided on settlement website; and toll-free number established for the settlement).[3]

31.     Notice to members of the U.S. Class, except statutory notice required to be given by the defendants pursuant to 28 U.S.C. § 1715, shall be the responsibility of U.S. Class Counsel, the cost of which shall be paid by the Settlement Fund according to the terms of the Agreement.   To effect such notice, U.S. Class Counsel have agreed to engage CAC Services L.L.C. to advise them with respect to the providing of notice. CAC Services L.L.C. has proposed a Notice Plan that will provide notice to the members of the U.S. Class consistent with the parties' agreement and as ordered herein.

32.     Summary notice, substantially in the forms attached hereto as Exhibit A shall be disseminated in accordance with the Notice Plan.

33.     A Long Form Notice, substantially in the form of attached Exhibit B, shall be mailed, first class postage prepaid, to each potential member of the U.S. Class identified by the Settling Parties in accordance with the Notice Plan through reasonable efforts, including each member of the U.S. Class whose identity becomes known as a result of the notice published pursuant to paragraph 19 above.   The IPEX Defendants

---

[3]     *See also Klein*, 705 F. Supp. 2d at 640 (notice plan included direct mail for those members whose names and addresses were known, publication in national newspapers including *USA Today*, a class website, which explained the lawsuit and contained links to the case filings, relevant deadlines, and contact information for persons who believed they should be included in the class); *In re Diet Drugs*, Nos. 1203, 99-20593, 2000 WL 1222042, at *35-38 (E.D. Penn. Aug. 28, 2000) (notice plan included use of a class website, television commercials, summary notice published in national and local newspapers, notices in healthcare provider publications, and direct mailings to pharmacists and doctors); *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 230 (S.D. Va. 2005) (notice plan included nationwide publication notice, class website, toll-free telephone number, and individual mailings to reasonably identifiable class members); *In re Warfarin Sodium Antit. Litig.*, 391 F.3d 516, 526 (3d Cir. 2004) (notice plan included targeted publications in *USA Today, USA Weekend, Parade,* and other nationally circulated publications, a call-center to answer telephone inquiries, and a class website).

have informed Class Counsel that they do not maintain data specifying names and addresses for the members of the U.S. Class. The IPEX Defendants shall, however, make reasonable efforts to provide the notice provider with all reasonably available data, if any, specifying the names, addresses, and any other contact information of the members of the U.S. Class. CAC Services L.L.C. shall mail a Long Form Notice to reasonably identifiable distributors, wholesalers, installers, plumbers, homebuilders, contractors, and associations in which such entities may have membership (e.g., National Association of Homebuilders) of the Kitec Systems at the addresses last known to the IPEX Defendants.

34.     Pursuant to 28 U.S.C. § 1715, the IPEX Defendants, through CAC Services, L.L.C., shall cause to be mailed all required notices within 10 days of this Order being entered.

35.     The press releases, approved in a writing signed by Counsel for the IPEX Defendants and hereby approved by this Court, shall be disseminated pursuant to the Notice Plan within 15 days of entry of this Preliminary Approval Order.

36.     Fifteen days before the date set for the Formal Fairness Hearings in the U.S. Kitec MDL Class Action, CAC Services L.L.C. shall file proof, by affidavit, of the aforesaid publications and mailings and compliance with the Notice Plan.

37.     No later than the dissemination of the first Settlement Notice, the Claims Administrator shall cause a toll-free telephone facility to be established for the United States. The toll-free telephone number(s) of such facility shall be included in the published notice. The telephone facility shall be capable of (1) receiving requests for Claims Forms, the long-form notice of this settlement described in paragraph 20, or any other materials described in this section, and (2) providing general information

concerning deadlines for opting out of the settlement or filing a Claims Form, and the dates and locations of relevant Court proceedings, including the Formal Fairness Hearings. The toll free number(s) shall be maintained by the Claims Administrator during the entirety of the Claims Period.

38.     CAC Services L.L.C. and the Claims Administrator shall mail long-form notices or any other required materials to anyone requesting them.

39.     CAC Services L.L.C. and the Claims Administrator shall maintain records of its activities, including logs of all telephone calls and mailings, and shall keep a computerized database containing a running tally of the number of and types of materials mailed by it.

40.     No later than the dissemination of the first Settlement Notice to be issued pursuant to the Notice Plan, the Claims Administrator shall cause an internet website concerning the Settlement to be established. The website shall be maintained by the Claims Administrator during the entirety of the Claims Period. The internet address of the website shall be included in the Settlement Notice. The website shall provide (i) generalized information concerning deadlines for opting out of the U.S. Class or filing a Claims Form, and the dates and locations of relevant Court proceedings, including the Formal Fairness Hearings; (ii) a listing of the toll-free phone number to be established pursuant to paragraph 24; and (iii) copies of this Agreement, the long-form notice, the Claims Form, and information concerning the submission of Claims Forms. A similar website shall be available in the French language.

41.     Notice in compliance with the Notice Plan and the details provided in this Order is hereby found to be the best notice practicable under the circumstances and

constitutes due and sufficient notice of the Agreement and the Formal Fairness Hearing to the U.S. Class and all persons entitled to receive such notice as potential members of the U.S. Class.

42.   Class Counsel or the Notice Advisor shall file proof by affidavit of the direct mailing of the Long Form Notices and publications of the summary notices and press release 15 days before the Formal Fairness Hearing.

## OPTOUT PROCEDURE

43.   The Notice Plan will advise class members of the option to exclude themselves from the settlement and pursue their claims individually. Notice periods for opting out are "almost wholly an exercise of the Court's discretion." *In re Potash Antit. Litig.*, 161 F.R.D. 411, 413 n.4 (D. Minn. 1995). The sixty-day opt-out period provided for in connection with the Settlement is reasonable. *See, e.g., id.* ("In selecting a 60-day period, we are satisfied that the period allowed will neither compel an unnecessarily rushed response, nor will it lull the potential class member into complacency"). Federal courts have regularly approved of dual notice opt-out periods in which the deadline to opt out was 60 days or *fewer*.[4]

44.   Objectors' complaint that the proposed form for opting out is too complex is baseless. *See In re Am. Inv. Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 263

---

[4] *Id.; see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (affirming 31-day opt-out period pursuant to dual notice plan, even though one-third of the class members received untimely notice); *DeJulius v. New England Health Care Emp. Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005) (affirming 32-day opt-out period and noting that "[f]or due process purposes, rather than looking at actual notice rates, our precedent focuses upon whether the district court gave 'the best notice practicable under the circumstances'"); *Fidel v. Farley*, 534 F.3d 508, 513-15 (6th Cir. 2008) (affirming 46-day opt-out period and recognizing that publication notice and notice provided to brokerage houses on behalf of stockholders satisfies due process); *In re OCA, Inc. Sec. & Deriv. Litig.*, Civ. A. No. 05-2165, 2008 WL 4681369, at *16 (E.D. La. Oct. 17, 2008) (approving 39-day opt-out period and noting that courts have typically found notice sent to brokerage houses adequate, even where the notice was not then sent to class members in a timely manner).

F.R.D. 226, 237 (E.D. Pa. 2009). The five questions on the two-page form are not complicated, do not require specialized expertise and seek information easily available to the average homeowner, such as the approximate size of his property. To assist class members in completing the form, the notice directs potential class members to a website, www.kitecsettlement.com, that provides photographs and detailed information about how to determine whether a home or other structure contains the Kitec System. Equally meritless is Objectors' complaint that the form asks class members whether they are represented by counsel with regard to the Kitec System. That question does not invade the attorney-client privilege, it furthers it. "Providing information regarding . . . injury and the name and address of counsel, if any, does not impermissibly burden a claimant's ability to return the request for exclusion within a reasonable time." *See In re Serzone*, 231 F.R.D. at 235.

45. A potential member of the U.S. Class may opt out of the potential U.S. Class. To exercise this opt out right, the potential U.S. Class member must send written notification of the decision to request exclusion by completing in its entirety the Opt Out Form included with the Notice and available online. The Opt Out Form shall be sent via first class mail to the Claims Administrator, to designated U.S. Counsel for the IPEX Defendants, and to designated Class Counsel. Designated U.S. Counsel for the IPEX Defendants must be served at the following address:

> Richard L. Josephson
> Van H. Beckwith
> BAKER BOTTS, L.L.P.
> 2001 Ross Avenue
> Suite 600
> Dallas, Texas 75201-2980
>
> *U.S. Counsel for the IPEX Defendants*

Designated Class Counsel must be served at the following address:

> Charles LaDuca
> CUNEO GILBERT & LADUCA, LLP
> 507 C Street, NE
> Washington, DC 20002
>
> *Counsel for Class Plaintiffs*

46.     The completed Opt Out Form shall bear the signature(s) of the potential

U.S. Class member having a legal interest in the property being opted out (even if

represented by counsel), state the address of the property(ies) that may contain the Kitec

System, and provide a description of the property (i.e., a Unit of Residential Property, a

Unit of High Rise Residential Property, a Unit of Hospital or Hotel Property, a Unit of

Other Residential Property, or Commercial Structure) and include specifically the

approximate size of the property in square feet; number of opt out units at each address

containing or that contained the Kitec System, and a summary description of the potential

U.S. Class member's property containing the Kitec System.  If the potential U.S. Class

member has entered into a written or oral agreement to be represented by counsel, the

Opt Out Form shall also be signed by the attorney who represents the potential U.S. Class

member.  The deadline for submission of Opt Out Forms shall be a postmarked date of

September 30, 2011 (the "Opt Out Deadline").  Class members desiring to opt out must

fully complete and postmark an Opt Out Form by the Opt Out Deadline or their request to

opt out shall be null and void.

47.     Except for those potential members of the U.S. Class who have filed a

timely and proper Opt Out Form, all others will be deemed members of the U.S. Class for

all purposes under the Agreement.

48.     All members of the U.S. Class shall be bound by the Agreement and by all subsequent proceedings, orders, and judgments in the U.S. Kitec MDL Class Action. Any Settlement Class Member who elects to opt out of the U.S. Class pursuant to this Agreement shall not be entitled to relief under or be affected by the Agreement.

49.     Potential U.S. Class members who have elected to opt out of the U.S. Class may withdraw their Opt Out Forms prior to the Effective Date, but only if they accept the benefits and terms of the Agreement and dismiss with prejudice any other pending action against the IPEX Defendants arising from damage to their affected buildings, homes, residences, or any other structures as caused by any alleged defects in the Kitec Systems installed in those properties.

50.     U.S. Class Counsel shall have the right to contact persons who file an Opt Out Form and to challenge the timeliness and validity of any opt out request, as well as the right to effect the withdrawal of any opt out filed in error and any exclusion which a U.S. Class member wishes to withdraw for purposes of participating in the Settlement as set forth in the Agreement.  The Court shall determine whether any of the contested opt outs are valid.

51.     Within seven (7) days of the Opt Out Deadline, U.S. Class Counsel shall provide counsel for the IPEX Defendants, by electronic mail, facsimile, and/or hand delivery, with a list identifying each person who has requested to opt out of the U.S. Class and attaching copies of all such Opt Out Forms.

52.     The Agreement provides that the IPEX Defendants may void the Agreement if 850 or more opt outs are received, which is to be calculated by the definitions and formula provided in the Agreement.  The IPEX Defendants shall advise

Class Counsel and the Court, in writing, if they intend to exercise that election within 30 days after the Opt Out Deadline.

53.     Notice to Class members must clearly and concisely state the nature of the lawsuit and its claims and defenses, the Class certified, the Class member's right to appear through an attorney or opt out of the Class, the time and manner for opting out, and the binding effect of a class judgment on members of the Class.  Fed. R. Civ. P. 23(c)(2)(B),

54.     Compliance with Rule 23's notice requirements also complies with Due Process requirements.  "The combination of reasonable notice, the opportunity to be heard, and the opportunity to withdraw from the class satisfy due process requirements of the Fifth Amendment." *In re Prudential Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3rd Cir. 1998).

55.     The proposed notice and opt out form in the present case meet those requirements.  They explain the action, the Class, and the right to opt out or appear through an attorney.  They also describe the time and manner for opting out.

56.     Although the Non-Moving Plaintiffs object to the two-month period for opting out, that length is reasonable and appropriate for Class members in the present case to determine if they have a Kitec system in their building and wish to proceed or opt out of the class.  Prospective Class members can readily determine whether they are likely to be Class members, since membership depends largely on presently or previously owning or renting a building that has a Kitec System.  A two month period for opting out has been approved in other cases. *E.g., Supermarkets Gen'l Corp. v. Grinnell Corp.*, 490

F.2d 1183, 1184-85 (2d Cir. 1974); *Pierce v. Novastar Mortgage, Inc.*, No. C05-5835, 2007 WL 1046914 at *2 (W.D. Wash. Apr. 7, 2007).

57.     An opt out period is normally intended to occur at an early stage of the litigation.  *Cf. In re Nissan Motor Corp. Antit. Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977).  The Court is not persuaded that a dual or intermediate opt out period is necessary or useful in the present case.  Accordingly, the Court approves the opt out form and the notice of the right to opt out of the case.

## OBJECTIONS TO SETTLEMENT

58.     A member of the U.S. Class may object to the Agreement by filing written objections.  The Settlement Notice shall advise members of the U.S. Class of their right to object.  To exercise this objection right, the U.S. Class member must provide written notice of the objection via first class mail to U.S. Class Counsel, Counsel for the IPEX Defendants, and to the MDL Court postmarked by the Objection Deadline.  The objection must bear the signature of the U.S. Class member having a legal interest in the property (even if represented by counsel) and must specify: (1) the U.S. Class member's current address and telephone number, (2) the address of the property(ies) that may contain or have contained the Kitec System, (3) the number of Units of Residential Property, Units of High Rise Residential Property, Units of Hospital or Hotel Property, or Units of other Residential Property at each such address, (4) the exact nature of the objection, the facts underlying the objection, and whether or not the objector intends to appear at the applicable Formal Fairness Hearing, and (5) a copy of any documents which the objector wants to use at the applicable Formal Fairness Hearing.  If the objector is represented by counsel, the objection shall also be signed by the attorney who represents the objector.

U.S. Class Counsel, Counsel for the IPEX Defendants, and the MDL Court  must be served with copies of the objections, postmarked no later than the Objection Deadline. The Objection Deadline shall be September 30, 2011.

59.     Any attorneys hired by individual members of the U.S. Class for the purpose of objecting to the proposed Settlement shall file with the Clerk of Court and serve on U.S. Class Counsel and the IPEX Defendants' counsel a notice of appearance, not later than September 30, 2011.

60.     Any filings, objections, or appearances shall be filed and/or served with the Court and with designated U.S. Counsel for the IPEX Defendants and Class Counsel. Designated U.S. Counsel for the IPEX Defendants must be served at the following address:

> Richard L. Josephson
> Van H. Beckwith
> BAKER BOTTS, L.L.P.
> 2001 Ross Avenue
> Suite 600
> Dallas, Texas 75201-2980
>
> *U.S. Counsel for the IPEX Defendants*

Any filings, objections, or appearances must also be served on designated Class Counsel at the following address:

> Charles LaDuca
> CUNEO GILBERT & LADUCA, LLP
> 507 C Street, NE
> Washington, DC  20002
> Telephone:  202-789-3960

*Counsel for Class Plaintiffs*

61.     U.S. Class Counsel and U.S. Counsel for the IPEX Defendants shall promptly furnish each other with copies of any objections and appearances that come into their possession.

62.     No person shall be entitled to contest the approval of the terms and conditions of the Agreement or the Final Order and Judgment requested thereon except by filing and serving written objections in accordance with the provisions of this Order and the Agreement. Any member of the U.S. Class who does not submit a timely, written objection in compliance with all of the procedures set forth in this Order and the Agreement shall be deemed to and shall have waived all such objections and will, therefore, be bound by all proceedings, order, and judgments in this case, which will be preclusive in all pending or future lawsuits or other proceedings.

### STAY OF PROCEEDINGS AND PRELIMINARY INJUNCTION

63.     The Settlement is appropriately conditioned on entry of a temporary injunction prohibiting Class members from participating in any other proceeding in any jurisdiction based on or relating to the Kitec System during the notice and opt-out period between preliminary approval and the formal fairness hearing. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act and the Anti-Injunction Act.

64.     The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (2006). The Act empowers a federal court to "enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion.'" *See Klay*

*v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004) (quoting *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978)).

65.     Although the Anti-Injunction Act limits a federal court's powers under the All Writs Act, it expressly authorizes a federal court to enjoin parallel state court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (2006). "[T]he parallel 'necessary in aid of jurisdiction' language is construed similarly" in both the All Writs Act and the Anti-Injunction Act. *Newby*, 302 F.3d 295, 301 (5th Cir. 2002); *see also In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985).

66.     Federal courts' broad authority under the All Writs Act encompasses the power to enjoin both subsequent and parallel arbitration proceedings. *In re Y & A Group Sec. Litig.*, 38 F.3d 380, 382 (8th Cir. 1994) ("No matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations."); *Bank of Am. v. UMB Fin. Servs., Inc.*, 618 F.3d 906, 914-15 (8th Cir. 2010) (noting that "the district court has the inherent ability to protect its own jurisdiction over the dispute pending before it," and affirming the district court's *sua sponte* injunction of parallel arbitration proceedings); *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162, at *4 (S.D.N.Y. July 1, 1996) ([I]t would be incongruous if the Court had the authority to stay pending litigation, but not to enjoin arbitration, 'in aid of its jurisdiction' even before judgment is entered.").[5]

---

[5] Where federal courts have declined to enjoin arbitral proceedings, they have not done so because they lacked the power. *See In re Lehman Bros. Sec. & ERISA Litig.*, 706 F. Supp. 2d 552, 562 (S.D.N.Y. 2010) ("In the absence of some showing that this arbitration would interfere with the multidistrict litigation pending before this Court . . . resort to the All Writs Act would be inappropriate."); *see also U.S. v. Eberhard*, No. 03 CR.562(RWS), 2004 WL 616122, at *3 n.6 (S.D.N.Y. March 30, 2004) ("If this Court does not choose to exercise that power [to stay] here, it is not for lack of such power but because the NASD arbitrations have not been shown to interfere with the Court's jurisdiction."). Rather, federal courts have

67.     *In re Piper Funds, Inc.*, *Instit. Gov't Income Portfolio Litig.*, 71 F.3d 298 (8th Cir. 1995), on which Objectors rely, is distinguishable from the present circumstances.  In that case, the district court had prohibited class members from opting out of the class prior to the formal fairness hearing and precluded them from pursuing arbitration during the same period.  In this sense, the court "[h]eld hostage" an unwilling class members' right to arbitrate.  *Id.* at 304.  The facts in *Piper Funds* were distinguished in *In re PaineWebber Ltd. P'ships Litig.*, No. 94 CIV. 8547 SHS, 1996 WL 374162 (S.D.N.Y. July 1, 1996).  *See id.* at *5-6.  In that case, the plaintiffs had the option to opt out but <u>chose</u> not exercise it.  After the opt-out period ended, they moved to compel arbitration.  *See id.* at *1-2.  The court refused to compel arbitration, recognizing that its power to stay arbitration implied its power to refuse to compel arbitration.  *See id.* at *5-6.

68.     The plaintiffs in *PaineWebber* had the option to opt out of the class but chose not to exercise it.  *See id.* at *1.  The plaintiff in *Piper Funds* was prohibited from opting out <u>and</u> from pursuing arbitration.  *See id.* at 300.  The *Piper Funds* plaintiff's inability to exercise its opt-out right was "[a] crucial predicate for the Eighth Circuit's decision in that case."  *In re PaineWebber*, 1996 WL 374162, at *5.

69.     Here, as in *PaineWebber,* the requested temporary injunction is well within the power granted by the All Writs Act.[6]  Pending the Formal Fairness Hearing,

---

declined to enjoin arbitral proceedings because case-specific facts made it inappropriate to do so in any parallel proceeding—judicial, arbitral, or otherwise.  *See, e.g., Klay*, 376 F.3d at 1111 (noting that, as with parallel state court proceedings, "the potential *res judicata* effect that the arbitration of arbitrable claims could have on a pending *in personam* federal case does not in itself permit a federal court to enjoin such arbitration").

[6]Neither *Stevenson v. Tyco Int'l*, No. 04-CV-4037 (KMK), 2006 WL 2827635 (S.D.N.Y. Sept. 29, 2006), nor *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.*, No. 08 Civ. 5655(LTS), 2010 WL 1222026 (S.D.N.Y. Mar. 29, 2010), stands for the proposition that "generally the All Writs Act must give way to the FAA."  Opposition at 23.  Neither case involved a class action or a settlement approval

the injunction precludes any parallel proceedings by class members who choose not to exercise their opt-out right and to remain in the class. On the other hand, if any individual chooses during the opt-out period to opt out of the Class and instead pursue individual claims in arbitration, he or she is free to do so.

70.    In cases such as this one—where parties to complex, multidistrict litigation have reached a settlement agreement after lengthy, protracted, and difficult negotiations—parallel proceedings can "'seriously impair the federal court's flexibility and authority' to approve settlements in the multi-district litigation" and threaten to "destroy the utility of the multidistrict forum otherwise ideally suited to resolving such broad claims." *See, e.g., In re Baldwin-United*, 770 F.2d at 337; *In re Diet Drugs Prods. Liab. Litig.*, 282 F.3d 220, 236 (3d Cir. 2002) (finding threats to court's jurisdiction "particularly significant where there are conditional class certifications and impending settlements in federal actions").[7]

71.    An extensive body of federal case law recognizes that complex, multidistrict litigation like this one implicates special considerations under the All Writs

---

process. In other words, a stay of arbitration while judicial proceedings were pending would have completely frustrated the parties' rights to arbitrate. That is simply not the case here, where the parties can either (a) remain in the class and participate in the settlement disbursement, or (b) opt out of the class and pursue whatever individual claims they choose in the arbitral or judicial fora of their choice. .

[7] Objectors cite two cases for their objection to enjoining parallel state court proceedings. *Royal Ins. Co. of Am. v. Quinn-L Capital Corp.*, 960 F.2d 1286 (5th Cir. 1992); *In re Ford Motor Co. Bronco II Prods. Litig.*, MDL-991, 1995 WL 489480 (E.D. La. Aug. 15, 1995). However, the Fifth Circuit declined to hold whether the in-aid-of-jurisdiction exception to the Anti-Injunction Act includes "'lengthy, complicated litigation' that is the 'equivalent of a res.'" *See Royal Ins. Co.*, 960 F.2d at 1299. The court specifically noted that Fifth Circuit precedent does not preclude such an interpretation and ultimately declined, on other grounds, to enjoin the litigation. *See id.* In *Ford Motor Co.*, the district court noted that exceptions to the general rule against enjoining state court proceedings may be made where "a partial or global settlement in a multidistrict class action[] is entered" or where "the prospect of settlement of complex litigation is imminent." 1995 WL 489480, at *2. Even though the court ultimately did not enjoin parallel proceedings, it did so because on its facts "[t]here [was] simply no judgment, settlement, or imminent settlement that this court need[ed] to protect from interference. . . ." *Id.* at *2-3.

Act.[8] "In complex cases . . . the challenges facing the overseeing court are such that it is likely that almost any parallel litigation in other fora presents a genuine threat to the jurisdiction of the federal court." *In re Diet Drugs*,., 282 F.3d at 236.

72.    The Non-Moving Parties have argued that the Anti-Injunction Act limits the Court's authority to issue this injunction. Nevertheless, the All Writs Act empowers district courts to "issue all writs necessary or appropriate in aid of their respective

---

[8]    *See In re Baldwin-United Corp.*, 770 F.2d at 337 (stating that complex class action pending before the federal district court "was the virtual equivalent of a res over which the district judge required full control"); *In re Asbestos Sch. Litig.*, No. 83-0268, 1991 WL 61156, at *3 (E.D. Pa. Apr. 16, 1991) (staying state court proceedings is proper under federal law "'where a federal court is on the verge of settlement of a complex matter, and state court proceedings undermine its ability to achieve that objective'" (internal citations omitted)), *aff'd mem.*, 950 F.2d 723 (3d Cir. 1991); *In re The Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99,104 (3d Cir. 2002) ("[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state courts."); *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 202-03 (3d Cir. 1993) (approving of *In re Baldwin-United* and *In re Asbestos Sch. Litig.*, and noting that complex class actions may be appropriate instances in which to enjoin parallel proceedings); *Newby*, 302 F.3d at 301 ("[T]he district court had authority to compel lawyers properly before it from engaging in vexatious and needlessly harassing maneuvers that challenged judicial effforts to . . . preserv[e] fair processes in the complex suit in federal courts.") *Three J Farms, Inc. v. Plaintiffs' Steering Comm. (In re Corrugated Container Antit. Litig.)*, 659 F.2d 1332, 1334-35 (5th Cir. Unit A Oct. 1981) (affirming injunction in a "complicated antitrust action [that] has required a great deal of the district court's time and has necessitated that it maintain a flexible approach in resolving the various claims of the many parties"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1997) (approving of appellate decisions in which "courts have extended the exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation"); *Liles v. Del Campo*, 350 F.3d 742, 746-47 (8th Cir. 2003) (affirming district court's injunction in class action so as to ensure enforceability of the preliminary settlement approval and to prevent further depletion of settlement fund); *Negrete v. Allianz Life Ins. Co. of N.A.*, 523 F.3d 1091, 1102 (9th Cir. 2008) (commenting that "the existence of advanced federal in personam litigation [that] may, in some instances, permit an injunction in aid of jurisdiction . . . . is a fairly common theme"); *Battle v. Liberty Nat'l Life Ins. Co.*, 877 F.2d 877, 882 (11th Cir. 1989) ("[I]t makes sense to consider this case, involving years of litigation and mountains of paperwork, as similar to a *res* to be administered.").

District courts in the Fifth Circuit repeatedly recognize that the existence of complex litigation—particularly where settlement is imminent or limited assets exist to satisfy a judgment—necessitates injunction of parallel proceedings. *See DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 310-11 (W.D. Tex. 2007) ("[D]istrict courts are authorized to issue injunctions under the jurisdictional exception where settlement is imminent or pending."); *Holmes v. Trustmark Nat'l Bank*, No. CIV.A.. 195CV 323 GR., 1996 WL 904513, at *2 (S.D. Miss. Jan. 11, 1996) (holding that where class members are "faced with more than a speculative possibility that their interests [would] be undermined by individual lawsuits against the defendants," the "Court is clearly empowered to stay pending state proceedings for purposes of exercising jurisdiction"); *In re Ford Motor Co. Bronco II Prods. Litig.*, MDL-991, 1995 WL 489480, at *2 (E.D. La. Aug. 15, 1995) (noting that the district court noted that exceptions to the general rule against enjoining state court proceedings may be made where "a partial or global settlement in a multidistrict class action[] is entered" or where "the prospect of settlement of complex litigation is imminent").

jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651; *see also Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004) ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). "Whether viewed as an affirmative grant of power to the courts or an exception to the Anti-Injunction Act, the All-Writs Act permits courts to certify a national class action and to stay pending federal and state cases brought on behalf of class members." *In re Joint E. & S. Dist. Asbestos Litig.*, 134 F.R.D. 32, 37 (E.D.N.Y. 1990). "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977) (upholding order for telephone company to assist with pen register).

73.     "[D]istrict courts overseeing complex federal litigation are especially susceptible to disruption by related actions in state fora." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 314 F.3d 99, 104 (3d Cir. 2002). Concerns of Defendants in large class actions about remaining exposed to "countless suits in state court despite settlement of the federal claims" is a consequence "that would seriously undermine the possibility for settling any large, multi-district class action." *Id.* at 104-05 (quotations omitted). Permitting collateral attacks to disrupt such a settlement would undermine "Congress's purposes underlying diversity jurisdiction and the Multi-district Litigation Act, 28 U.S.C. § 1407, an application of Congress's constitutional power to regulate interstate

commerce." *Prudential* at 105. Accordingly, the All-Writs Act authorizes this court to certify the class and enjoin other litigation.

74.     Objectors do not dispute that the Court's jurisdiction over this class action is proper or that this is a decidedly complex, multidistrict class action involving lengthy negotiations and a proposed settlement reached after years of hotly-contested motion practice and discovery and countless hours of formal and informal arm's-length negotiations. Objectors do not dispute that the Court has the power and authority to enjoin current or future federal proceedings regarding Kitec Systems. Nor do they contest the Court's power to enjoin future state court proceedings. *See Newby*, 302 F.3d at 301 (noting that the Anti-Injunction Act "does not preclude injunctions against a lawyer's filing of *prospective* state court actions").

75.     The requested injunction relief will impact only a few existing lawsuits, all of which are in their infancy. None of the plaintiffs in these cases would be unduly prejudiced by a temporary injunction pending the Formal Fairness Hearing. The plaintiffs in two of these case—*Thompson v. Lennar Corp., et al.* and *Mortensen v. Highland Homes*—did not join the Opposition. It is undisputed that if the Settlement is finally approved, all of the cases that would be subject to the injunction would become moot.

76.     Accordingly, the Court hereby orders that any actions or proceedings pending in any court in the United States involving a Kitec System, except any matters necessary to implement, advance, or further approval of the Agreement or settlement process, are stayed pending the Formal Fairness Hearing and the issuance of a Final Order and Judgment.

77.     In addition, all members of the U.S. Class are hereby enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as class members or otherwise), or receiving any benefits from any other lawsuit, arbitration, or administrative, regulatory, or other proceeding or order in any jurisdiction based on or relating to the Kitec System, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, or the Agreement.   In addition, all members of the U.S. Class are hereby preliminarily enjoined from filing, commencing, prosecuting or maintaining any other lawsuit as a class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action in any jurisdiction) on behalf of members of the U.S. Class, if such other class action is based on or relates to the Kitec System, the claims and causes of action, or the facts and circumstances relating thereto, in this proceeding, and/or the Agreement.  The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over this action.  The Court finds no bond is necessary for issuance of this injunction.

## FORMAL FAIRNESS HEARING

78.     Pursuant to Federal Rule of Civil Procedure 23, the Court has scheduled a Formal Fairness Hearing to take place on **November 17, 2011 at 10:00 a.m.,** in Courtroom 1310, Earle Cabell Federal Building and United States Courthouse, 1100 Commerce Street, Room 1452, Dallas, Texas, 75242, to determine whether the proposed Settlement is fair, reasonable, and adequate, to consider any objections by members of the U.S. Class, and to consider an award of reasonable attorneys' fees and expenses and an award to the U.S. Class Representatives.

79. At least fourteen (14) days before the Formal Fairness Hearing, the parties shall file a motion requesting that the Court grant final approval of the Settlement embodied in the Agreement and that the Court enter a Final Order and Judgment consistent with the terms of the Agreement, in the form required by the Agreement and as submitted by the U.S. Settling Parties. At that time, U.S. Class Counsel may also file a petition for an award of attorney's fees and reimbursement of expenses.

80. On or before 7 days before the Formal Fairness Hearing, U.S. Class Representatives and the IPEX Defendants may file memoranda of law responding to any objections of the members of the U.S. Class filed with the Court.

The Court reserves the right to reschedule the Formal Fairness Hearing as necessary and, should the Court so reschedule, Class Counsel shall update the settlement website with the new hearing date and time.

IT IS SO ORDERED.

SIGNED this 29ᵗʰ day of April, 2011.

Royal Furgeson
Senior United States District Judge

### NOTICE OF KITEC PLUMBING SYSTEM SETTLEMENT

## For Qualifying Owners or Lessees of Property in Which Kitec Plumbing Systems Have Been Installed

**What Is The Litigation About?**   In the litigation, *IN RE KITEC PLUMBING SYSTEM PRODUCTS LIABILITY LITIGATION*, Case No. 09-md-2098, filed in the United States District Court for the Northern District of Texas, *, Rosati et al. v IPEX Inc. et al.*, Court File No. CV-09-13459, filed in the Ontario Superior Court of Justice, and *Cooke et al v Ipex Inc. et al.*, Court File No. 200-06-000121-098, filed in the Superior Court of Québec, Class Representatives (representatives of current and former owners or lessees of buildings, homes, residences, or other structures in which Kitec Systems have or had been installed) alleged that the Kitec Systems manufactured or distributed by or on behalf of IPEX Defendants are subject to possible premature failures resulting in leaks or damage to the structure. IPEX denies these allegations and asserts that the Kitec Systems are free of any defect and will last throughout the warranty period. In March 2011, IPEX Defendants and the Representative Plaintiffs reached a proposed class action settlement to resolve this dispute. As a result of this settlement, the Courts have certified classes and you should check www.kitecsettlement.com and the full notice for the precise definition of the U.S. Class, the Canadian National Class, and the Quebec Class. In general, the Classes are defined to include all Persons that own, have owned, lease, or have leased, and all those who have or may pursue claims through or in the name or right of those who own or have owned, lease or have leased, buildings, homes, residences, or any other structures that contain or have ever contained Kitec Systems manufactured and/or sold by the IPEX Defendants. Note that for the Quebec Class if you own, have owned, lease, or have leased buildings, homes, residences, or structures in the Province of Quebec and you have more than 50 employees or are a government entity or legal person established in the public interest, you cannot be part of the Quebec Class, <u>but you are part of the Canadian National Class</u>. Further information about this lawsuit and related Settlement is available in the detailed Notice, Settlement Agreement, and other documents located on the Settlement Website at www.kitecsettlement.com

**What Plumbing Systems Are The Subject Of This Lawsuit?**  The plumbing systems that are the subject of this lawsuit (the "Kitec System" throughout this Notice) are individual plumbing parts, components or systems manufactured by or on behalf of IPEX and sold under the brand names Kitec, PlumbBetter, IPEX AQUA, WarmRite, Kitec XPA, AmbioComfort, XPA, KERR Controls, Plomberie Améliorée or otherwise. Examples of these plumbing systems include PEX-AL-PEX, PE-AL-PE, PERT-AL-PERT, PEX pipe, valves, fittings, and/or other components. Photos of the Kitec System are available at www.kitecsettlement.com.  For more information about whether you are eligible to file a claim, access the "Claim Eligibility" tab at www.kitecsettlement.com. Do NOT call the Court or IPEX.

**Who Is Involved?** To receive a payment from this Settlement, you must be a Class Member and must complete and return timely the Claim Form which is available at www.kitecsettlement.com. You are a Class Member if:

  • You own, have owned, lease or have leased a building, home, residence, or other structure, in the United States (excluding the Clark County, NV Class) or Canada, that contains or at any time contained a Kitec System

As a Class Member, you qualify for a payment only if you meet all eligibility requirements and properly complete and send in the Claim Form, which is available online at www.kitecsettlement.com

**What Are The Settlement Terms?**  In summary, this Settlement creates a U.S. $125,000,000.00 Settlement Fund for the purpose of providing Class Members who file proper and eligible Claim Form with compensation for the repair of Kitec Systems through the Claims Period, which ends 8 years after the Settlement Effective Date.  You should check www.kitecsettlement.com for the exact Claims Deadline date.  The amount paid per claimant depends upon a number of factors including the type and cost of any property damage incurred and shall be determined by the Claims Administrator.

The Class Counsel will petition the Court for attorneys' fees plus reasonable expenses and costs in the amount not to exceed U.S $25,000,000.00.

This settlement is conditional on final approval by all three courts considering it.

**If I'm A Member Of The Class, What Are My Legal Rights?**

  **EXCLUDE YOURSELF.**  If you exclude yourself or "opt-out," you will get no payment, but you will be free to sue IPEX on your own about the claims discussed in this Notice. For instructions on excluding yourself from the Settlement, see the Long Form Notice or www.kitecsettlement.com for the required Opt Out Form. The deadline for opting out is [DATE].

  **OBJECT.**  If you do not wish to exclude yourself from the Settlement but you think some aspects of the proposed settlement are objectionable, you can file a formal objection with the appropriate Court. For instructions on objecting to the Settlement, see the Long Form Notice or www.kitecsettlement.com The deadline for objecting to the Settlement is [DATE].

  **APPEAR AT A HEARING.**  If you do not exclude yourself, you can ask to speak to the appropriate Court about the fairness of the Settlement. The Court U.S., Ontario and Quebec Courts will hold Formal Fairness Hearings to decide if the proposed Settlement is fair, reasonable and adequate. In the U.S., the Hearing will be held on [DATE] at [TIME] p/a.m. at the United States District Court for the Northern District of Texas, 1100 Commerce Street, Dallas, TX 75242. In Ontario, the Hearing will be held on [DATE] at [TIME] p/a.m. at the Ontario Superior Court of Justice, Windsor Courthouse, 245 Windsor Avenue, Windsor, Ontario, N9A 1J2. In Quebec, the Hearing be held on [DATE] at [TIME] p/a.m. at the Superior Court of Québec, Palais de Justice, 300, boul. Jean-Lesage, Québec City, Québec, G1K 8K6. For instructions on appearing at the appropriate Formal Fairness Hearing, see the Long Form Notice or www.kitecsettlement.com. The deadline for filing paperwork that will allow you to appear at the hearing yourself or through counsel is [DATE].

  **SEND IN A CLAIM FORM.**  If your Kitec System appears to be faulty prior to the expiration of the warranty period, send in a Claim Form. You will not receive a payment if you do not submit a Claim Form within the eight-year Claims Period and before the Claims Deadline described in the Settlement. The exact Claims Deadline will be posted online at www.kitecsettlement.com.

  **DO NOTHING.**  If you do nothing, you will be bound by the terms of the Settlement and its release provisions and give up your right to sue IPEX on these claims later. You will receive no payment if you fail to file a Claim Form by the Claims Deadline.

**How Do You Receive A Payment?**   In order to receive a payment, you must timely submit a Claim Form. There is an eight-year Claims Period beginning on the Effective Date of the Settlement.

**For More Information On Your Rights Under The Proposed Settlement, Including Access To The Settlement Agreement, Long Form Notice, Claim and Opt Out Forms, visit www.kitecsettlement.com; call 1-888-XXX-XXXX; or write to Kitec Claims Administrator, XXXXX Street Address, XXCITYXX, MN XZIPX-XXXX.**

PLEASE DO NOT CALL THE COURT AND DO NOT CALL IPEX.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In re Kitec Plumbing System Products | § | MDL NO. 2098 |
| Liability Litigation | § | Case No. 09-md-2098-F |

## ONTARIO SUPERIOR COURT OF JUSTICE
## ONTARIO, CANADA

Anthony Bellissimo                                   Case No. CB-09-13459
v. Ipex and IPEX USA LLC

## SUPERIOR COURT OF QUÉBEC
## QUÉBEC, CANADA

Karen Cooke                                          Case No. 200-06-000121-098
v. Ipex Inc.

## NOTICE OF PRELIMINARY APPROVAL OF SETTLEMENT

**U.S. Hearing Date & Time:** _____, _____, at _____ a.m.

**Canadian National Class Hearing Date & Time:** _____, _____, at _____ a.m.

**Quebec Class Hearing Date & Time:** _____, _____, at _____ a.m.

**BE SURE TO CHECK THE SETTLEMENT WEBSITE WWW.KITECSETTLEMENT.COM FOR REGULAR UPDATES AND UPDATES TO HEARING DATES AND TIMES.  YOU HAVE A DUTY TO KEEP YOURSELF INFORMED.**

*A court of law authorized this Notice. It is not from a lawyer. You are not being sued.*

**TO:**    ALL PERSONS THAT OWN, HAVE OWNED, LEASE, OR HAVE LEASED, AND ALL THOSE WHO HAVE OR MAY PURSUE CLAIMS THROUGH OR IN THE NAME OR RIGHT OF THEM, BUILDINGS, HOMES, RESIDENCES, OR ANY OTHER STRUCTURES IN THE UNITED STATES AND CANADA THAT CONTAIN, OR AT ANY TIME CONTAINED, KITEC PLUMBING SYSTEMS AND/OR COMPONENTS.  YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR CHOOSE NOT TO ACT.  PLEASE READ THIS ENTIRE NOTICE CAREFULLY.

**PURPOSE OF THIS NOTICE:** This Notice is being disseminated to all members of certain class actions described below pursuant to Court Orders to notify the classes of a proposed settlement of the lawsuits. **Additional details about this settlement, including a full copy of the Settlement and Release Agreement, can be found at www.kitecsettlement.com.**

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

**THE CLASSES:**

For settlement purposes only, the Settling Parties have agreed to the Courts' certification of the following classes of Persons in regard to claims regarding the Kitec System (which may consist of components, individual parts, or as a system, PEX-AL-PEX, PE-AL-PE, PERT-AL-PERT, PEX pipe, valves, fittings, and/or components, manufactured by or on behalf of IPEX whether sold under the names Kitec, PlumbBetter, IPEX AQUA, WarmRite, Kitec XPA, AmbioComfort, XPA, KERR Controls, Plomberie Améliorée or otherwise). Photos of the Kitec System are available for your review at www.kitecsettlement.com.

1. *In the United States:*

The United States District Court for the Northern District of Texas, acting under authority from the Judicial Panel for Multi-District Litigation, certified a United States Class for settlement purposes only as follows:

> All Persons that own, have owned, lease, or have leased, and all those who have or may pursue claims through or in the name or right of those who own or have owned, lease or have leased, buildings, homes, residences, or any other structures located in the United States that contain or have ever contained Kitec Systems manufactured and/or sold by the IPEX Defendants, excluding only the Clark County Class. For purposes of this definition, individuals and entities shall include any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subrogees, assignees, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.

2. *In all of the provinces and territories of Canada:*

The Ontario Superior Court of Justice certified a Canadian National Class for settlement purposes only as follows:

> All Persons that own, have owned, lease, or have leased, and all those who have or may pursue claims through or in the name or right of those who own or have owned or lease or have leased, buildings, homes, residences, or any other structures located in Canada, excluding only the members of the Quebec Class, that contain or have ever contained Kitec Systems manufactured and/or sold by the IPEX Defendants. For purposes of this definition, individuals and entities shall include any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subrogees, assignees, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.

**QUESTIONS? VISIT WWW.KITECSETTLEMENT.COM
DO NOT CALL IPEX OR THE COURT**

3.    *For certain owners and lessees in the Province of Quebec, Canada:*

**The Superior Court of Québec certified a Quebec Class for settlement purposes only as follows:**

All natural persons, as well as all legal persons established for a private interest, partnerships and associations having no more than 50 persons bound to it by contract of employment under its direction or control during the 12-month period preceding the motion for authorization, that own, have owned, lease or have leased, and all those who have or may pursue claims through or in the name or right of those who own or have owned, lease or have leased, buildings, homes, residences, or any other structures located in Quebec that contain or have ever contained Kitec Systems manufactured and/or sold by the IPEX Defendants. For purposes of this definition, "persons" shall include all such individuals and entities and any and all of the individuals' or entities' spouses, joint owners, heirs, executors, administrators, insurers, mortgagees, tenants, creditors, lenders, predecessors, successors, subrogees, assignees, subsequent owners or occupants, trusts and trustees, attorneys, agents, and assigns and all persons who are entitled to assert a claim on behalf thereof.

Note: If you own, have owned, lease, or have leased buildings, homes, residences, or structures in the Province of Quebec and you have more than 50 employees or are a government entity or legal person established in the public interest, you cannot be part of the Quebec Class, <u>but you are part of the Canadian National Class.</u>

For purposes of this Notice, the United States Class, the Canadian National Class, and the Quebec Class are referred to as the Class as created or to be proposed for creation by the respective Courts set forth above.

- A Settlement Agreement ("Settlement") resolving Class claims in the cases has been negotiated on behalf of the Class by Class Counsel and with Defendants IPEX Inc. and IPEX USA LLC and its predecessor IPEX USA Inc. and IPEX Distribution Inc. (collectively, "IPEX Defendants") and related entities.

- The Settlement involves a one hundred and twenty five million U.S. dollar (US$125,000,000) Settlement Fund (including attorneys' fees and costs set forth below) to be used for the benefit of Class Members to pay for the repair of buildings, homes, residences, or any other structures with a Kitec System.

**FAIRNESS & GOOD FAITH SETTLEMENT HEARINGS:** The Courts have issued Orders of Preliminary Approval of the Settlement in the United States and approved this notice and other related matters in Canada, and have set Fairness and Good Faith Settlement Hearings ("Formal Fairness Hearings") to consider the fairness, adequacy, and reasonableness of the Kitec Settlement. In the U.S., the hearing will be held on       at    a.m., at the United States District Court for the Northern District of Texas (the "U.S. Court"), 1100 Commerce Street, Dallas, Texas 75242.

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

In Canada, the hearing for the Canadian National Class will be held on ▓▓▓▓, at ▓▓ a.m., at the Ontario Superior Court of Justice (the "Canadian Court"), Windsor Courthouse, 245 Windsor Avenue, Windsor, Ontario, N9A 1J2.

The hearing for the Quebec Class will be held on ▓▓▓▓, at ▓▓ a.m., at the Superior Court of Québec (the "Quebec Court"), Palais de Justice, 300, boul. Jean-Lesage, Québec (Québec) G1K 8K6.

| YOUR LEGAL RIGHTS AND CHOICES | | POST MARK ON OR BEFORE |
|---|---|---|
| **REQUEST FOR EXCLUSION FROM THE CLASS ("OPT-OUT")** | You do not have to take part in the Settlement or be a Member of the Class. You can exclude yourself or opt out. If you exclude yourself, you cannot get a payment from the Settlement Fund and you cannot object to the Settlement. Any Court orders will not apply to you. By excluding yourself, you keep any right to file or proceed with a lawsuit as an individual concerning the Kitec System that you may have. (see No. 8 below) | ▓▓ ??? ▓ |
| **OBJECT TO SETTLEMENT** | You can submit a written objection, raising any concerns you have about this Settlement. (see No. 9 below) | ▓▓ ??? ▓ |
| **APPEAR AT FAIRNESS HEARING** | You can ask to speak to the appropriate Court (that is being asked to certify the class that you are a member of) about the fairness of the Settlement at the Formal Fairness Hearing by submitting a written Notice of Appearance. (see No. 12 below) | ▓ ??? ▓ |
| **DO NOTHING** | If you do nothing, **you will be bound by the Kitec Settlement.** You will be eligible to receive the benefits of the Kitec Settlement if you submit a properly completed and timely claim form and if you satisfy the conditions to present a claim. **You should regularly check the Settlement website www.kitecsettlement.com for updates on the status of the litigation and you have a duty to keep yourself informed.** | N/A |

- Your rights and options – **and the deadlines for each** – are explained in this Notice.
- The respective Courts set forth above must still decide whether to approve the proposed Settlement.
- This Notice is not an opinion of the Courts about the merits of the claims or defenses of the parties in the lawsuits. Instead, this notice is sent to you to tell you about legal rights you may have with respect to this proposed Settlement.

## BASIC INFORMATION

**1.      Why did I get this Notice?**

This Notice is published pursuant to Orders by the Courts. You received this Notice because our records indicate that you may be a member of the Class. If you are a tenant or occupant of a building at the address this Notice was sent, please read it and ensure that a copy of the Notice is also provided to the landlord or owner of the building. You have legal rights and choices to make before the Courts decide whether to finally approve this Settlement. This Notice summarizes:

- What the lawsuits are about.
- Your legal rights.
- What the benefits and consequences of this Settlement are for eligible recipients.

**QUESTIONS? VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

You are urged to look at the complete Agreement to understand all of its terms. You can find it at www.kitecsettlement.com. This Notice is not intended to alter the Agreement.

**2.     What are the lawsuits about?**

The lawsuits arise from allegedly defective Kitec Systems manufactured or distributed by or on behalf of the IPEX Defendants, and installed within buildings, residences, homes, and other structures in various places in the United States and Canada. Plaintiffs who brought the lawsuits and who seek to represent the Class are property owners in the United States and Canada with buildings, residences, homes, or other structures that have or had the Kitec System specified or installed by various builders, developers, general contractors and/or plumbers. Plaintiffs who originally brought the lawsuits allege that the Kitec System is or may be defective because it could prematurely fail over time resulting in leaks or damage to the structure. The Class Actions seek money damages together with attorneys' fees and costs of suit from the IPEX Defendants on behalf of all Class Members. **The Class Actions do not seek any damages for personal injury, and the Settlement does not affect claims for such damages.** Proceeds from the Kitec Settlement, after attorneys' fees and costs have been paid, will be used for the benefit of Class Members under Court supervision.

**3.     What will the Kitec Settlement provide homeowners or property owners if approved by the Courts?**

If approved by the Courts, the Kitec Settlement will create a one hundred and twenty five million U.S. dollar (US$125,000,000) Settlement Fund (less attorneys' fees and costs set forth below) to be used for the benefit of the Class to pay for the repair of buildings, residences, homes or other structures plumbed with the Kitec System. Before any money can be paid out, the Kitec Settlement must first receive final approval from the Courts and survive any appeal, if any, that may be filed. Any money paid from the Settlement Fund to members of the Settlement Classes will be paid in the class member's local currency. The Plan of Allocation accompanying this Notice describes the amounts and conditions of the benefits to the Class. **NOTE: To be eligible to receive any money from the Settlement Fund, you must complete and submit the Claims Form accompanying this Notice within the eight (8) year Claims Period and before the Claims Deadline described in the Agreement.** After the Claims Deadline, any funds remaining in the Settlement Fund after all payments to those Class Members filing proper Claim Forms, will be returned to the IPEX Funding Entities. Claims made after the Claims Deadline will be rejected.

**4.     What is a class action?**

In a class action lawsuit, one or more people called "representative plaintiffs" sue on behalf of other people who are similarly situated. This group of people together is referred to as the "class" or "class members." One court decides all the issues in the lawsuit for all class members, except for those who exclude themselves from the class.

In the United States, the judge hearing the class action lawsuit is the Honorable Royal Furgeson. The presently-named Representative Plaintiffs in the Multidistrict Litigation Proceedings (*IN RE KITEC PLUMBING SYSTEM PRODUCTS LIABILITY LITIGATION*, Case No. 09-md-2098 (N.D. Tex.)) are: Melvin Burns, Thomas Olsen, Eugene A. Ehler, Larry Ward, Frank Cordes, Shivanii Singh, John Fliss, Kelly Moysh, James Eddins, Gil Oetting, Cecil Oetting, Robert M. Nelson, Ulrich Waldburger, Jean M. Waldburger, Kevin Lykens, Jeffrey Eisenman, Todd Covington, Theresa J. Bryant, Mindi Campbell, Trent Campbell, Ardy Johnson, Anessa Johnson, Jonnie M. Bryant, Thomas S. Brashier, Richard Clark, Patrice Clark, Rebecca Steiner, William Burns, Lily Burns, Steven Cassano, Nathaniel Hillary, and Sarah Hoehn.

In Ontario, the judge hearing the class action lawsuit on behalf of the Canadian National Class is Justice Terrence Patterson. The presently-named Representative Plaintiff in the Ontario proceeding (*Bellissimo v. IPEX Inc. and IPEX USA LLC*, Case No. CV-09-13459 (Ont. SJC)) is: Anthony Bellissimo.

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

In the Province of Quebec, the judge hearing the class action lawsuit is Justice Jean-Francois Émond.   The Representative Plaintiff in the Quebec proceeding (*Cooke v. Ipex Inc.*, Case No. 200-06-000121-098 (Sup.Ct., Dist. of Québec)) is: Karen Cooke and Coopérative d'habitation Lézarts..

**5.      Who does the Kitec Settlement involve?  What disputes does the Kitec Settlement resolve?**

The Kitec Settlement includes all persons who are in the Classes described above who have not previously opted-out of the Class Action. The proposed Kitec Settlement seeks to resolve all past, present and future, known and unknown, direct or contingent Class claims against the IPEX Defendants and related entities, which include IPEX Inc., IPEX USA Inc. and IPEX USA LLC, IPEX's sales agents, wholesalers, distributors, builders, suppliers and any other third parties involved with the Kitec System (collectively, the "Released Parties").   However, the Settlement does not affect Class Member claims for personal injury or certain specific claims against builders or plumbers due to the following specific installation failures:  (1) a penetration of the pipe from a foreign object such as a nail; (2) improper attachment of the pipe fittings to plumbing fixtures or appliances; (3) improper stress on the Kitec System due to improper installation of pipe in framing members;  (4) leaks at fittings due to a plumber-supplied malfunctioning pressure reducing valve not manufactured or sold by the IPEX Defendants and not part of the Kitec System; (5) leaks at fittings to plumbing fixtures interface due to age of fixture sealant components supplied or provided by a plumber; and (6) any similar installation issue wholly unrelated to the design, manufacture, or performance of the Kitec System.

**6.      Why have the Class and IPEX Defendants decided to settle?**

The Courts have not decided in favor of the Class or the IPEX Defendants.  The IPEX Defendants deny any fault, wrongdoing, illegal conduct, or liability whatsoever on their part, and have asserted numerous affirmative defenses to the facts and causes of action alleged in the U.S. and Canadian actions. The IPEX Defendants also deny any and all allegations of fault, wrongdoing, or liability made by any of the plaintiffs in other actions against them.  Both sides, however, have agreed to a settlement in order to avoid the risks and costs associated with trial. Class Counsel believes that the amount paid in this Settlement reflects an evaluation of the claims and potential recovery, considering the facts as known to Class Counsel after careful investigation over many years, the likelihood of prevailing at trial, and the likelihood that the litigation, if not settled now, would be further protracted, involve complex issues of fact and law, extra large costs and expenses, and the risk the Class could lose at trial.

**7.      What happens if this Settlement is not approved by the Courts?**

If the Kitec Settlement is not approved by the Courts at the Formal Fairness Hearings, then the Kitec Settlement will terminate and all Class Members and Parties will be restored to the position they were in before the Kitec Settlement was signed.

## KITEC SYSTEM DESCRIPTION

**8.      How do I know if I have a Kitec System?**

The Kitec pipe is typically blue in color for cold water applications and orange in color for hot water applications. The pipe is usually marked with one of the following brand names; Kitec, PlumbBetter, IPEX AQUA, WarmRite, Kitec XPA, AmbioComfort, XPA, KERR Controls or Plomberie Améliorée. Where the fittings are visible look for the words Kitec or KTC on them.  The terms CSA B137.9/10 or ATSM F1974 could also indicate that you have a Kitec system. Often, the best places to look for the Kitec system is near the hot water tank or in the mechanical room where the pipe is connected to or exits the walls.  Also look under kitchen sinks or bathroom vanities, where the pipe and/or fitting exits the wall.

## YOUR RIGHTS – OPTING OUT OF THE CLASS ACTIONS

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM
DO NOT CALL IPEX OR THE COURT**

9.      **How do I inform the Courts if I want to exclude myself or opt out of the Settlement?**

You do not have to take part in the Kitec Settlement or be a Member of the Class. You can exclude yourself or opt out of the Settlement. If you exclude yourself, you cannot get a payment from the Settlement Fund and you cannot object to the Settlement. Any Court orders will not apply to you. By excluding yourself, you keep any right to file or proceed with a lawsuit about Kitec Systems that you may have.

**To exclude yourself, you must complete and send the attached Opt-Out Form to request exclusion by _____ via first class mail to the Claims Administrator, and to the designated counsel for Class Counsel and the IPEX Defendants at:**

| Class Members with claims related to property(ies) in the United States, should mail opt-out forms to: | | |
|---|---|---|
| *IN RE KITEC PLUMBING SYSTEM PRODUCTS LIABILITY LITIGATION*, Case No. 09-md-2098 (N.D. Tex.) | | |
| Claims Administrator Address | Co-lead counsel for U.S. Plaintiffs | U.S. Counsel for IPEX Defendants |
| | Charles J. LaDuca Cuneo Gilbert & LaDuca, LLP 507 C Street, NE Washington, DC 20002 | Richard L. Josephson Van H. Beckwith Baker Botts L.L.P. 2001 Ross Avenue Suite 600 Dallas, Texas 75201 |
| Class Members with claims related to property(ies) in Canada (outside of the Province of Quebec and those with buildings in the Province of Quebec who employ more than 50 employees or were established in the public interest), should mail opt-out forms to: | | |
| *Bellissimo v. IPEX Inc. et al*, Ontario Sup. Ct. of Justice, No. CV-09-13459 (the "Canadian National Action") | | |
| Claims Administrator: Address | Co-lead counsel for Canadian Plaintiffs | Canadian Counsel for IPEX Defendants |
| | Charles Wright Siskinds LLP 680 Waterloo Street London, ON N6A 3V8 | Benjamin Zarnett Goodmans LLP Bay Adelaide Centre 333 Bay Street, Suite 3400 Toronto, ON M5H 2S7 |
| For Class Members with claims related to property(ies) in the Province of Quebec (except those who employ more than 50 people or were established in the public interest), should mail opt-out forms to: | | |
| *Cooke v. IPEX Inc.*, Superior Court of Québec, No. 200-06-000121-098 (the "Quebec Action") | | |
| Claims Administrator: Address | Co-lead counsel for Quebec Plaintiffs | Quebec Counsel for IPEX Defendants |
| | Simon Hébert Siskinds, Desmeules LLP Les Promenades du Vieux-Québec 43, rue de Buade, Suite 320 Québec (Québec) G1R 4A2 | Christopher Richter Woods LLP 2000, boul. McGill College, Suite 1700 Montréal (Québec) H3A 3H3 |

**The Court-required Opt-Out Form that you must fill out if you want to be excluded or to opt out is attached to this Notice. It is also available at www.kitecsettlement.com. You must fill out and serve the Opt out Form to be excluded.**

**Do not send Opt-Out Forms to the Court. Counsel will provide the Opt-Outs to the Court.**

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

## YOUR RIGHTS – OBJECTING TO THE SETTLEMENT

**10.     How do I inform the Courts if I do not like the Settlement?**

If you are a member of the Class, then you can inform the Courts that you do not like the Kitec Settlement or some part of it. This is called objecting to the Settlement. You also have the option and right to hire your own lawyer at your own expense. To object, you or your lawyer must send a letter stating your reasons for objecting or stating that you intend to appear at the appropriate Formal Fairness Hearing, as the case may be. Members with claims relating to buildings located in the United States may only object before the U.S. Court and appear at the U.S. Formal Fairness Hearing.   Members with claims relating to buildings located in Canada may only object before the applicable Canadian Court and appear at the appropriate Canadian Formal Fairness Hearing. **The Courts, however, are entitled and empowered to approve the Kitec Settlement in spite of any objections and then all members of the Class will be bound by the Kitec Settlement.**

The letter to the appropriate Court must:

- State in the caption of the letter: NOTICE OF OBJECTION OR APPEARANCE
- Include the name and title of the lawsuit:
    - Members of the U.S. Class should mention: *IN RE KITEC PLUMBING SYSTEM PRODUCTS LIABILITY LITIGATION*, Case No. 09-md-2098 (N.D. Tex.).
    - Members of the Canadian National Class **(outside of the Province of Quebec and those with buildings in the Province of Quebec who employ more than 50 employees or were established in the public interest)** should mention: *Bellissimo v. IPEX Inc. and IPEX USA LLC*, Case No. CV-09-13459 (Ont. SJC).
    - Members of the Class in the Province of Quebec **(except those who employ more than 50 people or were established in the public interest)** should mention: *Cooke. v. Ipex Inc.*, Case No. 200-06-000121-098 (Sup.Ct., District of Quebec).
- State that the letter is concerning the Kitec Settlement.
- Include your signature (even if you are represented by counsel), and the signature of your attorney if you have retained one.
- Your current address and telephone number.
- Include your current address and the address of the property(ies) that may contain or have contained the Kitec System.
- Include a description of the property at each address (e.g.,Unit of Residential Property, Unit of High Rise Residential Property, Unit of Hospital and Hotel Property, Unit of Other Residential Property or Commercial Structure). See the agreement ¶ 88 at www.kitecsettlement.com for definitions of these terms.
- State the exact nature of the objection you have, a summary of the basis for these objections and a description of any law or case supporting your objections.
- State whether you or your lawyer will appear at the appropriate Fairness Hearing to speak on your objections, and if so, how long you will require to present your objections.
- Provide copies of any documents that you or your lawyer wish to present at the appropriate Fairness Hearing.

**Your objection letter must be mailed and postmarked before** ░░░░░░░**,to the following addresses:**

| Class Members with claims relating to residences, buildings or other structures located in the United States should mail objections to the addresses below. | | |
|---|---|---|
| Co-lead counsel for U.S. Plaintiffs | U.S. Counsel for IPEX Defendants | U.S. Court |
| | | Honorable Royal Furgeson |
| Charles J. LaDuca | Richard L. Josephson | United States District Court for the |

**QUESTIONS? VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

| Cuneo Gilbert & LaDuca, LLP<br>507 C Street, NE<br>Washington, DC 20002 | Van H. Beckwith<br>Baker Botts L.L.P.<br>2001 Ross Avenue<br>Suite 600<br>Dallas, Texas 75201 | Northern District of Texas, 1100<br>Commerce Street, Dallas, Texas<br>75242 |
|---|---|---|
| **Class Members with claims relating to residences, buildings or other structures located in Canada (outside of the Province of Quebec and those with buildings in the Province of Quebec who employ more than 50 employees or were established in the public interest) should mail objections to the addresses below.** | | |
| **Co-lead counsel for Canadian Plaintiffs**<br><br>Charles Wright<br>Siskinds LLP<br>680 Waterloo Street<br>London, ON N6A 3V8 | **Canadian Counsel for IPEX Defendants**<br><br>Benjamin Zarnett<br>Goodmans LLP<br>Bay Adelaide Centre<br>333 Bay Street, Suite 3400<br>Toronto, ON M5H 2S7 | **Do Not Send Objections to the Court. Counsel will provide objections to the Court.** |
| **Class Members with claims relating to residences, buildings or other structures located in the Province of Quebec (except those who employ more than 50 people or were established in the public interest) should mail objections to the addresses below.** | | |
| **Co-lead counsel for Quebec Plaintiffs**<br><br>Simon Hébert<br>Siskinds, Desmeules LLP<br>Les Promenades du Vieux-Québec<br>43, rue de Buade, suite 320<br>Québec (Québec) G1R 4A2 | **Quebec Counsel for IPEX Defendants**<br><br>Christopher Richter<br>Woods LLP<br>2000, boul. McGill College<br>Suite 1700<br>Montréal (Québec) H3A 3H3 | **Do Not Send Objections to the Court. Counsel will provide objections to the Court.** |

## THE LAWYERS WHO REPRESENT THE CLASS AND WHO NEGOTIATED THIS SETTLEMENT

11.    **Do I have a lawyer in the Class Actions and who is Class Counsel?**

The United States District Court for the Northern District of Texas has entered an order concerning the organization of counsel and the case and appointed the below listed attorneys to represent all members of the Class in this case. Together, these attorneys are called Class Counsel. *You will not be individually billed or charged for these lawyers.* If you have any question regarding the Kitec Settlement, then you should contact Class Counsel to discuss your concerns. The names and addresses of Class Counsel are as follows:

| **Co-lead counsel for U.S. Plaintiffs**<br><br>Charles J. LaDuca<br>Cuneo Gilbert & LaDuca, LLP<br>507 C Street, NE<br>Washington, DC 20002 | **Co-lead counsel for U.S. Plaintiffs**<br><br>Robert K. Shelquist, Esquire<br>Lockridge Grindal Nauen, P.L.L.P.<br>100 Washington Avenue South, Suite 2200<br>Minneapolis, MN 55401 |
|---|---|
| **Co-lead counsel for U.S. Plaintiffs**<br><br>Michael McShane, Esquire<br>Audet & Partners, LLP<br>221 Main Street<br>Suite 1460<br>San Francisco, CA 94105 | **Co-lead counsel for U.S. Plaintiffs**<br><br>Jeffrey B. Cereghino, Esquire<br>Merrill, Nomura & Molineux, LLP<br>350 Rose Avenue<br>Danville, CA 94526 |

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

| Co-lead counsel for U.S. Plaintiffs | Co-lead counsel for Canadian Plaintiffs |
|---|---|
| Michael F. Ram, Esquire<br>Levy Ram & Olsen LLP<br>639 Front Street, Fourth Floor<br>San Francisco, CA 94111 | Charles Wright<br>Siskinds LLP<br>680 Waterloo Street<br>London, ON N6A 3V8 |
| **Co-lead counsel for Canadian Plaintiffs** | **Co-lead counsel for Quebec Plaintiffs** |
| Harvey Strosberg, QC<br>Sutts, Strosberg LLP<br>600 - 251 Goyeau Street<br>Windsor, Ontario N9A 6V4 | Simon Hébert<br>Siskinds, Desmeules LLP<br>Les Promenades du Vieux-Québec<br>43, rue de Buade, suite 320<br>Québec (Québec) G1R 4A2 |

**12.    How will these attorneys be paid?**

Class Counsel will seek an award of attorneys' fees and expenses in the amount not to exceed U.S. $25,000.000.00.

## THE COURTS' FORMAL FAIRNESS HEARINGS

**13.    When and where will the Courts decide whether to approve the Kitec Settlement?**

The U.S. Court will hold a Formal Fairness Hearing on _____ at _____ a.m.  The Ontario Court will hold a Formal Fairness Hearing for the Canadian National Class on _____ at _____ a.m.  The Quebec Court will hold a Formal Fairness Hearing for the Quebec Class on _____ at _____ a.m.  At these hearings, the Courts will consider whether the Kitec Settlement is fair and adequate. If there are objections, the Courts will consider them. The Courts will also listen to people who have asked to speak at the hearings. After the hearings, the Courts will decide whether to approve the Kitec Settlement. During these hearings, the Courts will also consider any objection to the amount of Class Counsel's fees and expenses.

The U.S. Formal Fairness Hearing will be held at:

United States District Court for the Northern District of Texas
100 Commerce Street, Dallas, Texas 75242

The Formal Fairness Hearing for the Canadian National Class will be held at:

Ontario Superior Court of Justice
Windsor Courthouse, 245 Windsor Avenue, Windsor, ON N9A 1J2

The Formal Fairness Hearing for the Quebec Class will be held at:

Superior Court of Québec
Palais de Justice, 300, boul. Jean-Lesage, Québec (Québec) G1K 8K6

**14.    Do I have to attend the Formal Fairness Hearings?**

No, you are not required to attend the Fairness Hearings if you have no objection to the Kitec Settlement. But you are welcome to attend if you wish to. If you want to object, you must send a letter but you are not required to attend the hearing to talk about it. As long as you mailed your written objection on time, the Courts will consider it (see

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**

No. 9 above). You may also pay your own lawyer to review the Kitec Settlement or attend the appropriate Formal Fairness Hearing on your behalf.

**15.     May I speak at the Formal Fairness Hearings?**

You will be allowed to speak at the appropriate Formal Fairness Hearing if you send a Notice of Appearance which specifies the subjects you wish to be heard on with the Court holding the Formal Fairness Hearing at which you intend to appear and with the Claims Administrator by no later than the objection deadline (see No. 9 above). Class Counsel and Counsel for the IPEX Defendants must also be served with copies of the Notice of Appearance, postmarked no later than the objection deadline. Failure to abide by the obligation to file a Notice of Appearance and to describe in detail the subjects on which you intend to be heard shall constitute a waiver of any right to be heard at the Formal Fairness Hearing.

## Getting More Information

**16.     Where can I receive more information about this settlement?**

This Notice is given to inform you of the Courts' preliminary approval of the Kitec Settlement. You may obtain specific details about the Agreement itself by contacting Class Counsel at the addresses listed above (see No. 10) or by viewing the Kitec Settlement on the website www.kitecsettlement.com maintained by Class Counsel to provide information to the Class. If you do not have internet access, you can also review and copy legal documents in the class actions, including all Kitec Settlement documents, during regular office hours at the office of the United States District Court for the Northern District of Texas, Clerk's Office, Room 1452, 100 Commerce Street, Dallas, Texas 75242, or the office of the Ontario Superior Court of Justice, Windsor Courthouse, 245 Windsor Avenue, Windsor, ON  N9A 1J2, or the Office of the Clerk of the Superior Court of Québec, District of Québec, Palais de Justice, 300, boul. Jean-Lesage, Québec (Québec) G1K 8K6.

**QUESTIONS?  VISIT WWW.KITECSETTLEMENT.COM**
**DO NOT CALL IPEX OR THE COURT**